UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | PLAINTIFF |
| | ) | |
| v. | ) | No. 4:23CR00268 LPR |
| | ) | |
| | ) | |
| TROY MOSELEY, III | ) | DEFENDANT |

**DEFENDANT'S MOTION FOR PRETRIAL RELEASE IN PRESUMPTION CASE**

Defendant Troy Hugh Moseley, III, by his attorney, Abigail Obana, respectfully requests that this Court release him on bond pursuant to the Bail Reform Act, 18 U.S.C. § 3142 and *United States v. Salerno*, 481 U.S. 739 (1987). Mr. Moseley will rebut the presumption of detention with evidence that he will be able to reside with his third-party custodian, Brenda Moseley, at 21 Lawrence Road in Greenbrier, Arkansas. Mr. Moseley is not a flight risk and will be on location monitoring in compliance with the Adam Walsh Child Protection and Safety Act of 2006 conditions. In support, Mr. Moseley states as follows:

I.      **Mr. Moseley Should Be Released on Bond with Conditions.**

In this case, the statute creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." § 3142(e)(3). The presumption inquiry proceeds in two steps. At Step 1, this Court must consider whether the defense has met the very low burden of production to rebut the presumption. As set forth below, Mr. Moseley will present evidence that rebuts the presumption. At Step 2, this Court must consider the presumption alongside all of the other § 3142(g) factors—even if the presumption is not rebutted. Release is warranted in this case because there are numerous facts under § 3142(g) that both rebut the presumption of detention and demonstrate that

there are conditions of release that will reasonably assure both Mr. Moseley's appearance in court and the safety of the community.

As the Supreme Court held in *Salerno*, "In our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." 481 U.S. at 755. This presumption of release is encapsulated in the BRA, 18 U.S.C. § 3142. The statute states that the Court "shall order" pretrial release, § 3142(b), except in certain narrow circumstances. The Court "shall order" release subject to "the least restrictive further condition[s]" that will "*reasonably assure*" the defendant's appearance in court and the safety of the community. § 3142(c)(1) (emphasis added). Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3189); *see also United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors nondetention.").

## II.     The Standard for Release in Presumption Cases

"[C]ase law emphasizes two checks that the BRA and the Constitution impose on the presumption: (1) [At Step 1,] there is an easy-to-meet standard for rebutting the presumption and the prosecution always bears the burden of persuasion, and (2) [at Step 2,] the presumption alone does not warrant detention and must always be weighed along with other factors [in 3142(g)]."[1]

---

[1] Alison Siegler, *Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis* 151 (2022), https://freedomdenied.law.uchicago.edu/; *see also Bail*, 51 GEO. L.J. ANN. REV. CRIM. PROC. 396, 407–08 (2022), https://www.westlaw.com/Document/I43b1e73f204811ed9f24ec7b211d8087/View/FullText.html?tran siti onType=Default&contextData=(sc.Default)&VR=3.0&RS=cblt1.0.

III.    **Case Law Emphasizes Two Checks That the BRA and the Constitution Impose on the Presumption of Detention.**

Case law has established two checks that the BRA and the Constitution impose on the presumption: (1) there is an easy-to-meet standard for rebutting the presumption and the prosecution bears the burden of persuasion, and (2) the presumption alone does not warrant detention and must always be weighed along with other factors in § 3142(g).[2] In addition, it is impermissible to detain a defendant in a presumption case based solely on evidence of past dangerousness, the nature of the crime charged, or the weight of the evidence.

A.  **Step 1: The Presumption is Easily Rebutted.**

Under the law, very little is required for a defendant to rebut the presumption of detention and therefore judges should find the presumption rebutted in most cases. To rebut the presumption, a defendant simply needs to produce "some evidence that he will not flee or endanger the community if released." *Dominguez*, 783 F.2d at 707; see also *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985), *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990) ("[T]o rebut the presumption, the defendant must produce some evidence."); *United States v. Gamble*, No. 20-3009, 2020 U.S. App. LEXIS 11558 at *1–2 (D.C. Cir. Apr. 10, 2020) (holding that "[t]he district court erred in concluding that appellant failed to meet his burden of production to rebut the statutory presumption" regarding dangerousness because "appellant did 'offer some credible evidence contrary to the statutory presumption,'" including information that he had a job offer) (unpublished) (quoting Uni*ted States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985)).

This "burden of production is not a heavy one to meet." *Dominguez*, 783 F.2d at 707; *see also United States v. Wilks*, 15 F.4th 842, 846–47 (7th Cir. 2021) (explaining that the

---

[2] *Id*. at 151.

defense bears "a light burden of production" to rebut the presumption, "but the burden of persuasion always rests with the government"). Indeed, the presumption of detention is rebutted by "[a]ny evidence favorable to a defendant that comes within a category listed in § 3142(g) . . . including evidence of their marital, family and employment status, ties to and role in the community . . . and other types of evidence encompassed in § 3142(g)(3)." *Dominguez*, 783 F.2d at 707 (emphasis added); *Jessup*, 757 F.2d at 384. Any "evidence of economic and social stability" can rebut the presumption. *Dominguez*, 783 F.2d at 707.

Notably, a defendant's ties to the community—standing alone—definitively rebut the presumption: "Where the defendant has presented considerable evidence of his longstanding ties to the locality in which he faces trial, as did [this defendant], the presumption contained in § 3142(e) has been rebutted." *United States v. Jackson*, 845 F.2d 1262, 1266 (5th Cir. 1988). As long as a defendant "come[s] forward with some evidence" pursuant to § 3142(g), the presumption of flight risk and dangerousness is definitively rebutted. *Dominguez*, 783 F.2d at 707 ("Any evidence favorable to a defendant that comes within a category listed in § 3142(g) can affect the operation of one or both of the presumptions. . . . Once this burden of production is met, the presumption is 'rebutted.'" (quoting *Jessup*, 757 F.2d at 384)); *see also O'Brien*, 895 F.2d at 816 (finding presumption of flight risk rebutted by evidence of effectiveness of electronic monitoring ankle bracelet together with posting of defendant's home).[3] Importantly, the government bears the burden of persuasion at all times. *Dominguez*, 783 U.S. at 707; *Jessup*, 757 F.2d at 384; *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985).

---

[3] To rebut the presumption of flight risk, for example, a defendant does not "have to *prove* that he would not flee—*i.e.*, he would [not] have to *persuade* the judicial officer on the point. [Instead], he would only have to introduce a certain amount of evidence contrary to the presumed fact." Jessup, 757 F.2d at 380– 81; *accord Dominguez*, 783 F.2d at 707.

In *Dominguez*, for example, the Seventh Circuit determined that the defendants had sufficiently rebutted the presumption of detention by introducing fairly minimal evidence about their employment and family ties. 783 F.2d at 707. Both defendants were Cuban immigrants who were not U.S. citizens but had been in the country lawfully for five years, and neither had a criminal record. *Id*. One of the defendants was married and had family members in the United States; both were employed. *Id*. These facts alone were sufficient for the Seventh Circuit to find that defendants had rebutted the presumption. *Id*.

## B. Step 2: The Presumption Alone is Not Sufficient to Warrant Detention and Must Be Weighed Along with the § 3142(g) Factors.

After the presumption is rebutted, the Court must weigh the presumption against all of the other evidence about the defendant's history and characteristics that tilts the scale in favor of release. *See Dominguez*, 783 F.2d at 707 ("[T]he rebutted presumption is not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."); *Jessup*, 757 F.2d at 384 (holding that the judge should consider the rebutted presumption along with the § 3142(g) factors). The Court should not give the presumption undue weight if evidence relating to other § 3142(g) factors support release.

## C. Forbidden Considerations in a Presumption Case

A judge may not detain a defendant in a presumption case based solely on (1) an unrebutted presumption alone, (2) evidence of the defendant's past dangerousness, or (3) the nature and seriousness of the crime charged, or (4) the weight of the evidence of the person's guilt.

First, the defendant never bears the burden of persuasion—even if the presumption is unrebutted. It is not incumbent on the defendant to "persuade the judge that there exist

conditions of release that will reasonably assure the safety of the community."[4] That burden of persuasion lies with the government, the standard of which is always clear and convincing evidence. *Wilks*, 15 F.4th at 846–47 ("[T]he burden of persuasion always rests with the government and an unrebutted presumption is not, by itself, an adequate reason to order detention.").

Second, even if the presumption is not rebutted, a judge is prohibited from detaining a defendant "based on evidence that he has been a danger in the past[.]" *Dominguez*, 783 F.2d at 707. Instead, past dangerous conduct is relevant only to the extent that the government can prove—by clear and convincing evidence—that the defendant is "likely to continue to engage in criminal conduct undeterred [ ] by . . . release conditions." *Id*. Even when a defendant is charged with a serious crime or has a significant criminal history, there may be release conditions that will reasonably assure the safety of the community.

Third, to rebut the presumption of dangerousness, a defendant need not "demonstrate that narcotics trafficking [or another serious crime] is not dangerous to the community." *Id*. at 706. Instead, this Court must analyze the defendant's individual characteristics under § 3142(g).

Fourth, the Court is forbidden from relying solely on the weight of the evidence of guilt to detain a defendant in a presumption case. A defendant is not required to "'rebut' the government's showing of probable cause to believe that he is guilty of the crimes charged." *Id*. A person's likelihood of guilt is analytically distinct from whether there are conditions of release that will reasonably assure the person's appearance or the safety of the community.

---

[4] Siegler, *supra* note 1, at 156.

## IV.    The Presumption of Detention Is Rebutted in This Case.

As detailed below, there is more than "some evidence that Mr. Moseley will not flee or endanger the community if released." *Dominguez*, 783 F.2d at 707. It is imperative that this Court follow the letter of the law by giving the presumption of detention "the low weight to which it is assigned by case law."[5] The defense will therefore rebut the presumption in this case. Mr. Moseley will present evidence that he has significant family ties. He is close to his parents, Brenda and Troy Moseley, Jr. He is in constant contact with them. Additionally, he has other familial support from his aunt, Sarah Thomas; uncle, Jimmy Shaw; and his maternal grandmother, Bobbie Lewis. Mr. Moseley is also a member of New Life Church in Greenbrier. The foregoing facts definitively rebut the presumption of detention in this case.

## V.    Regardless of the Presumption, Mr. Moseley Must Be Released Because There are Conditions That Will Reasonably Assure Appearance and Safety.

Regardless of whether this Court finds that the presumption of detention is rebutted, Mr. Moseley must be released because there are conditions that will reasonably assure the safety of the community and Mr. Moseley's appearance in court. The presumption of detention, on its own, is insufficient to justify detention. Wilks, 15 F.4th at 847 ("[A]n unrebutted presumption is not, by itself, an adequate reason to order detention."); *Jackson*, 845 F.2d at 1266 (concluding that if the presumption alone could justify detention, "there would be no need for Congress to have specified 'the weight of the evidence against the person' as a separate factor for the court to consider"). The BRA requires courts to weigh all the § 3142(g) factors in every case, even when the presumption has not been rebutted. *Wilks*, 15 F.4th at 847.[6]

---

[5] Siegler, supra note 1, at 146.
[6] S. REP. NO. 98-225, at 23, *as reprinted in* 1984 U.S.C.C.A.N. at 3206 ("Subsection (g) enumerates factors that are to be considered by the judicial officer in determining whether there are conditions of

A defendant cannot be detained "unless a finding is made that no release conditions '*will* reasonably assure . . . the safety of the community'" and the defendant's appearance in court. *Dominguez*, 783 F.2d at 707 (quoting § 3142(e)).

The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Mr. Moseley's appearance in court and the safety of the community. In addition to the standard conditions:

- Place Mr. Moseley in custody of a third-party custodian, Brenda Moseley "who agrees to assume supervision and to report any violation of a release condition to the court" [§ 3142(c)(1)(B)(i)] Ms. Moseley will be an appropriate third-party custodian because she is frequently home. She is willing to do whatever the Court deems necessary, including notifying the Court if Mr. Moseley violates a condition of his release.

- Place Mr. Moseley on Electronic Monitoring while on home incarceration.

Because there are conditions of release that will reasonably assure Mr. Moseley's appearance in court and the safety of the community, he should be released.

## VI. Statistics Showing that It Is Extraordinarily Rare for Defendants on Bond to Flee or Recidivate Further Demonstrate that the Foregoing Conditions of Release Will Reasonably Assure Appearance and Safety.

It is not necessary to detain Mr. Moseley to meet the primary goals of the BRA, which are to "reasonably assure" appearance in court and community safety. § 3142(e). In this case, this Court should be guided by AO statistics showing that nearly everyone released pending trial in the federal system appears in court and does not reoffend. In fact, in 2021, 99% of released federal defendants nationwide appeared for court as required and 99% were not arrested for new crimes on bond.[7] Significantly, this near-perfect compliance

---

release that will reasonably assure the appearance of the person and the safety of any other person and the community. Since this determination is made whenever a person is to be *released or detained under this chapter, consideration of these factors is required* . . . a court is expected to weigh all the factors in the case before making its decision as to risk of flight and danger to the community." (emphasis added)).

[7] App. 1, AO Table H-15 (Sept. 30, 2022). These high compliance rates have remained remarkably consistent over time, both before and after the pandemic. *See, e.g.*, Mot. for Bond, *United States v.*

rate is seen equally in federal *districts with very high release rates and those with very low release rates*.[8] Even in districts that release two-thirds of all federal defendants on bond, just 1% fail to appear in court and 1% are rearrested while released.[9] The below chart reflects shows the same vanishingly low failure to appear and rearrest rates based on AO data spanning 2007 to 2021.[10]



**Figure 4:** Even When Release Rates Increase, Arrestees Almost Never Flee or Recidivate.

---

*Rodriguez*, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide appearance rate of 99% and non-rearrest rate of 98%).

[8] The data showing near-perfect compliance on bond is illustrated in the figure below. Siegler, *supra* note 1, at 25 fig.4. The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending September 30, 2021. See App. 2, AO Table H-14A (Sept. 30, 2021), https://perma.cc/CYV5-3TZ6. The failure-to-appear and rearrest rates for these districts were calculated using App. 1, AO Table H-15. With regard to flight, the ten federal districts with the lowest release rates (average 20.00%) have an average failure-to-appear rate of 1.6%, while the ten districts with the highest release rates (average 64%) have an *even lower* failure-to-appear rate of 1.1%. *See* App. 1; App. 2. With regard to recidivism, the ten districts with the lowest release rates have an average rearrest rate on bond of 0.8%, while the ten districts with the highest release rates have an average rearrest rate of 1.1%. *See* App. 1; App. 2.

[9] *See* App. 1; App. 2.

[10] *See* Siegler, *supra* note 1, at 25 fig.4.

In addition, as the federal Probation and Pretrial Services Office recently highlighted, release rates rose slightly during the pandemic but failure-to-appear and rearrest rates did not increase.[11] Release rates increased from 25% in 2019 to 36% in 2021 but "the rates at which people on pretrial release failed to appear in court or were rearrested remained extremely low."[12]

The bond statistics for this district likewise strongly suggest that Mr. Moseley should be released. In this district, released federal defendants appeared for court 96.73% of the time in 2021, and only 5.09% of defendants were rearrested on release. *See* App. 1, AO Table H-15. Yet despite the statistically low risk of flight and recidivism that defendants like Mr. Moseley pose, the government recommends detention in 71% of cases nationwide and in 58.5% of cases in this district. See App. 3, AO Table H-3. The government's detention requests are not tailored to the low risk of flight and recidivism that defendants in this district and elsewhere pose.

Mr. Moseley must be released because the government has not established that he would be among the approximately 1% of defendants who fail to appear in court or are rearrested on bond. Detaining Mr. Moseley without such evidence violates their constitutionally protected liberty interest.

## VII.   Conclusion

For these reasons, Mr. Moseley respectfully requests that this Court find that the presumption has been rebutted and release him with conditions.

---

[11] *Id*. at 256 n.42.
[12] *Id*.

Respectfully submitted,

LISA G. PETERS
FEDERAL DEFENDER

By:    Abigail Obana
Bar Number AR2019223
Assistant Federal Defender
The Victory Building, Suite 490
1401 West Capitol Avenue
Little Rock, AR 72201
(501) 324-6113
E-mail: Abigail_Obana@fd.org

For:    Troy Moseley, III, Defendant